# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**VEIA CROCKETT,**

    **Plaintiff,**

    **v.**                                               **Case No. 20-CV-992-SCD**

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

    Veia Crockett seeks social security disability benefits based on a left ankle injury she sustained in a slip-and-fall accident. Following a hearing, an administrative law judge determined that Crockett was not disabled because she could still perform unskilled, sit-down jobs with certain physical limitations. Crockett now seeks judicial review of that decision, arguing that the ALJ failed to properly evaluate whether she was presumptively disabled, the opinion of an examining state-agency consultant, and her subjective allegations of disabling ankle pain and swelling. Because substantial evidence supports the ALJ's decision and Crockett has failed to demonstrate that the ALJ committed an error of law in reaching her decision, I will affirm the denial of disability benefits.

## BACKGROUND

    Crockett filed this action on July 1, 2020, seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me in July 2020 after all parties consented to magistrate-judge

jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 5, 6, 7. It is now fully briefed and ready for disposition. *See* ECF Nos. 20, 27, 28.

## I.    Procedural History

In March 2015, Crockett slipped on ice and fell, fracturing her left ankle. R. 40, 259.[1] She underwent surgery a few weeks later, but according to Crockett the surgery didn't help relieve her symptoms; she continued to experience pain and swelling and have difficulty walking. *See* R. 40–41, 262, 266, 340–436. Nevertheless, Crockett did not seek any further medical attention for her ankle impairment until 2018. *See* R. 279 (noting gap in medical records from March 2015 through April 2018).

In January 2018, Crockett applied for social security disability benefits, alleging that she became disabled on January 4, 2018 (the date of her application), when she was forty-five years old. R. 10, 169–74. Crockett asserted that she was unable to work due to her broken left ankle. R. 190. In a February 2018 function report, Crockett stated that she spent most of her day sitting because she "can't get around good at all." R. 202. She further stated that her ankle injury made it difficult to handle her personal care, cook, perform household chores and yardwork, and shop. 197–202. According to Crockett, she could walk for only ten minutes each day. R. 204.

In April 2018, Crockett was examined by Kurt L. Reintjes, MD, a consultative examiner paid by the Wisconsin Disability Determination Bureau (known in the Social Security parlance as Disability Determination Services or, simply, DDS), the state agency responsible for first reviewing her application. *See* R. 266–68. In his report, Dr. Reintjes wrote

---

[1] The transcript is filed on the docket at ECF No. 12-1 to ECF No. 12-2.

that Crockett walked with a "markedly antalgic gait favoring the left lower extremities" during the orthopedic examination. R. 267. Dr. Reintjes noted that Crockett also had "a tendency to walk more onto the medial aspect of her left foot with short guarded strides." *Id.* He further noted that Crockett had moderate swelling in her left ankle, couldn't balance all her weight on her left ankle,[2] demonstrated twenty degrees of dorsiflexion (upwards toward the shin) and twenty-five degrees of plantar extension (downwards away from the shin), and was guarded with both medial and lateral supination (outward rotation) and pronation (inward rotation). *Id.* All other findings of Crockett's lower extremities were within normal limits. *Id.*

Based on its review of the medical record, DDS allowed Crockett's claim of disability, finding her left ankle dysfunction presumptively disabling. R. 278. However, Bonnie Lammers, MD, (a medical consultant for DDS) overruled that determination, reasoning that DDS failed to provide a rationale for its finding. R. 278–79. Dr. Lammers noted that DDS's presumptive-disability finding also "did not appear supported by the available medical evidence." R. 279. According to Dr. Lammers, there was "a prolonged gap" in the medical records from Crockett's surgery in March 2015 through April 2018, when she was examined by Dr. Reintjes and had x-rays on her ankle. *Id.* Dr. Lammers determined that the orthopedic exam and diagnostic findings were not consistent with or supportive of the severity of Crockett's allegations. *Id.* Instead, based on her review of the record, she believed that Crockett was capable of light work with standing and walking limited to four hours and other postural limitations. *See* R. 269–79.

---

[2] In his report, Dr. Reintjes wrote that Crockett also was unable to bear weight on her *right* leg: "She has the inability to stand with fully weight bearing onto the left ankle balancing on it, but she cannot on the right leg." R. 267. The reference to Crockett's right leg appears to be a typographical error, as the record does not suggest that she experienced any dysfunction with respect to her right leg or ankle.

DDS subsequently denied Crockett's application initially and upon reconsideration. *See* R. 64–86. The initial reviewing consultant, Mina Khorshidi, MD, reached the same conclusions as Dr. Lammers. R. 69–71. Marcia Lipski, MD, the reviewing consultant at the reconsideration level, added several postural limitations and limitations pushing and pulling. R. 81–83.

After her application was denied at the state-agency level, Crockett (along with her attorney) appeared in person for a hearing before ALJ Guila Parker on September 12, 2019. *See* R. 27–63. Crockett testified that she stopped going to school after completing the eleventh grade. R. 33. Since then she worked several temporary, unskilled jobs, including at a hotel, as a high school janitor, at Subway restaurant, and as a host/hostess at a casual steakhouse. R. 35–39. She has not worked at all since 2010. R. 39.

Crockett also testified that she was unable to work due to constant, daily pain and swelling in her left ankle stemming from the 2015 slip-and-fall accident. R. 39–40. She had surgery to repair the fracture, but it didn't go well; her ankle was still "off track," making it "hard for [her] to even get around." R. 40–41. Crockett stated that she used a crutch every day—even when in the house—and that she could walk for only about five minutes before her ankle swelled up and caused "exclusive pain." R. 41–43. She also claimed to have difficulty balancing, suggesting that she would probably fall if she tried to stand or walk without her crutch. R. 43.

Crockett testified that, given the issues with her left ankle, she didn't get out of the house often. R. 46. Rather, she spent most of the day sitting inside watching television and elevating her ankle, which she always had wrapped with an Ace bandage. R. 44–45. Crockett indicated that she elevated her ankle about six or seven times a day for "a couple hours." R.

44. She further indicated that she needed help taking care of her personal needs and that a friend or her twelve-year-old daughter did most of the grocery shopping, cooking, laundry, and other household chores. R. 46–50. Crockett also stated that she had difficulty sleeping at night due to pain and stiffness in her ankle. R. 51–52. She reported taking prescription Ibuprofen but didn't think it helped to reduce her pain. R. 52.

The ALJ also heard testimony from Leslie Goldsmith, a vocational expert. *See* R. 59–62. According to Goldsmith, a hypothetical person with Crockett's age, education, and work experience could not perform her past relevant job as a host/hostess if she were limited to a restricted range of sedentary work. R. 59–61. That person could, however, perform other jobs, such as an assembler, an inspector, or a video security monitor. *Id.* Goldsmith testified that no jobs would be available if the person had to elevate her left lower extremity above waist level whenever seated, were off task more than ten percent of the workday, or were absent from work more than one day per month. R. 61–62.

On October 11, 2019, the ALJ issued a written decision determining that Crockett was not disabled and denying benefits. R. 7–23. The Social Security Administration's Appeals Council subsequently denied Crockett's request for review, R. 1–6, making the ALJ's decision a final decision of the Commissioner, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). This action followed.

## II.    The ALJ's Decision

To be considered disabled under the Social Security Act, Crockett had to prove that she was "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). The social security regulations set out a five-step sequential evaluation process to determine disability status. *See* 20 C.F.R. § 416.920(a)–(g). Crockett had the burden of proof at each of the first four steps; the burden shifted to the Commissioner at the fifth, and final, step. *See Due v. Massanari*, 14 F. App'x 659, 664 (7th Cir. 2001) (citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995)).

Applying this standard five-step process, the ALJ here concluded that Crockett was not disabled. *See* R. 10–19. The ALJ determined at step one that Crockett had not engaged in substantial gainful activity since January 4, 2018, the date of her application. R. 12. At step two, the ALJ found that Crockett had one "severe"[3] impairment: traumatic osteoarthritis of the left ankle. *Id.*

The ALJ determined at step three that Crockett's left ankle impairment did not meet or equal the severity of a presumptively disabling impairment. R. 12. Specifically, the ALJ considered Crockett's left ankle impairment under listings 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and 1.06 (fracture of the femur, tibia, pelvis, or one or more of the tarsal bones). R. 12–13. According to the ALJ, Crockett's left ankle impairment did not meet the severity of those listings because "[t]here is no evidence that [her] ankle impairment has resulted in the inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset." *Id.*

In reaching her step-three finding, the ALJ noted that DDS had initially allowed Crockett's claim of disability based on her ankle impairment medically equaling the criteria

---

[3] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

of listing 1.03. R. 13. However, the ALJ also noted that Dr. Lammers overruled that determination because DDS did not provide rationale to support it and because the evidence did not reflect the inability to ambulate effectively. *Id.* The ALJ pointed out that "there is no evidence that [Crockett] required the use of a hand-held assistive device that limits the functioning of both upper extremities (*e.g.*, walker, two crutches, or two canes)." *Id.* (citing Exhibit 3F). Further, the ALJ pointed out that Crockett testified "that she uses a single cane or single crutch to assist with mobility." R. 13 (citing Hearing Testimony).

The ALJ next assessed Crockett's residual functional capacity—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. § 416.945(a)(1). The ALJ found that Crockett could perform "sedentary work"[4] with several additional limitations: she is precluded from operating foot controls with her left lower extremity; she is precluded from climbing ladders, ropes, and scaffolds; she is limited to only occasionally[5] climbing ramps or stairs and occasionally balancing; and she requires a cane or a single crutch for ambulation. R. 13. In assessing this RFC, the ALJ considered the medical evidence, Crockett's subjective allegations, and the medical opinion evidence and prior administrative medical findings. *See* R. 13–17.

The ALJ did not fully credit Crockett's subjective allegations of disabling symptoms because they were, in the words of the ALJ, "not entirely consistent with the medical evidence

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[5] "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." Social Security Ruling (SSR) 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 SSR LEXIS 6, at *8–9 (July 2, 1996).

and other evidence in the record." R. 14. The ALJ provided five reasons to support this finding. *See* R. 14–17. First, according to the ALJ, Crockett's "records reflect that despite experiencing symptoms of her ankle impairment, [she] has retained reasonable physical function." R. 14–15. Second, the ALJ found that Crockett's "relatively mild objective findings . . . and treatment history are simply not consistent with allegations of disabling symptoms of left ankle pain." R. 15–16. Third, the ALJ concluded that the diagnostic evidence failed "to support a finding of physical abnormalities consistent with [Crockett's] allegations as to debilitating ankle pain." R. 16. Fourth, in the ALJ's view, "the nature and scope of [Crockett's] reported activities during the relevant period are also not consistent with allegations of disabling ankle pain." *Id.* Fifth, and finally, the ALJ noted that Crockett claimed her ankle impairment "first interfered with her ability to work in 2015," even though "[t]here is no evidence of work activity after 2010." R. 16.

With respect to the opinion evidence, the ALJ first considered the opinions Dr. Lammers and Dr. Khorshidi, the state-agency consultants who reviewed the record and opined that Crockett could perform light work with only four hours of standing and walking and certain postural limitations. R. 17 (citing Exhibits 1A, 4F, 5F). The ALJ found those opinions "partially persuasive because they are consistent with some of the evidence." R. 17. However, according to the ALJ, "the new evidence submitted reflects greater limitations and was not considered by the doctors." *Id.* Based on this more recent evidence, the ALJ restricted Crockett to sedentary work and added the need to use a cane or single crutch. *Id.*

The ALJ next considered the opinion of Dr. Lipski, the state-agency consultant at the reconsideration level who opined that Crockett had additional postural limitations and limitations pushing, pulling, and using foot controls on the left. R. 17 (citing Exhibit 3A). The

ALJ found Dr. Lipski's opinion "less persuasive." R. 17. According to the ALJ, Dr. Lipski's "opinion about limited use of foot controls is consistent with the diagnostic evidence of osteoarthritis, clinical findings of tenderness to palpation of the left ankle, and [Crockett's] reports of ongoing ankle pain." *Id.* However, in the ALJ's view, Dr. Lipski's other limitations were not supported by the record. *Id.*

Finally, the ALJ considered the opinion of Dr. Reintjes, the consultative medical examiner paid by DDS. R. 17 (citing Exhibit 3F). The ALJ found Dr. Reintjes' opinion "not persuasive because he presented no function-by-function analysis of [Crockett's] physical capacity." R. 17.

Continuing the sequential evaluation process, the ALJ determined at step four that Crockett was unable to perform her past relevant work as a host/hostess. R. 17. At step five, the ALJ determined that, given her age, education, work experience, and RFC, Crockett could perform unskilled, sedentary jobs (e.g., an assembler, an inspector, or a video security monitor) that exist in significant numbers in the national economy. R. 18–19. Based on those findings, the ALJ determined that Crockett had not been under a disability since January 4, 2018, the date she applied for disability benefits. R. 19.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing

*Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Crockett contends that the ALJ erred in finding that her ankle impairment did not satisfy the criteria of listing 1.03, weighing the opinion of the consultative medical examiner, and evaluating her allegations of disabling symptoms.

### I.    Listing 1.03

Crockett first argues that the ALJ erred in evaluating the severity of her ankle impairment at step three of the sequential evaluation process. *See* ECF No. 20 at 10–13.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926) (called "The Listings"). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595–96 (7th Cir. 2003); *Steele*, 290 F.3d at 940).

"For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also* 20 C.F.R. § 416.925 ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."). Here, the relevant listing is 1.03, which required Crockett to show that (1) she had undergone reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; (2) with inability to ambulate effectively, as defined in 1.00B2b; and (3) return to effective ambulation did not occur, or is not expected to occur, within twelve months of onset. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.03.

"Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b. Social security regulations indicate that "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* The regulations provide a non-exhaustive list of examples of ineffective ambulation such as "the inability to walk without the use of a walker, two crutches or two canes"; "the inability to walk a block at a reasonable pace on rough or uneven surfaces"; "the inability to use standard public transportation"; "the inability to carry out routine ambulatory activities, such as shopping and banking"; and "the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*

The ALJ here determined that Crockett's ankle impairment did not satisfy the criteria of listing 1.03 because there was no evidence that her impairment resulted in an inability to ambulate effectively or that return to effective ambulation wouldn't occur within twelve

months of onset. R. 12–13. In finding that Crockett had failed to satisfy all the criteria of listing 1.03, the ALJ relied on the opinion of Dr. Lammers, the state-agency medical consultant who overruled DDS's initial determination that the listing was medically equaled and who independently concluded that the evidence did not reflect the inability to ambulate effectively. R. 13 (citing Exhibit 5F). The ALJ also noted that there was no evidence that Crockett required the use of a hand-held assistive device that limited the functioning of *both* upper extremities, as Crockett testified that she used a *single* cane or crutch to assist with mobility. R. 13 (citing Exhibit 3F and Hearing Testimony).

Crockett argues that the ALJ committed reversible error by taking a "too-narrow view of the regulatory definition of an inability to ambulate by focusing on a use of single cane without considering the other examples of the necessary level of functional impairment." ECF No. 20 at 12. According to Crockett, the ALJ's error in this case is "almost identical" to the error made by the ALJ in *Moss v. Astrue*, 555 F.3d 556 (7th Cir. 2009). *Id.* at 11–13. I disagree.

The claimant in *Moss* applied for social security disability benefits after injuring her ankle in a car accident. *Moss*, 555 F.3d at 557. After a hearing, an ALJ determined that the claimant's impairment was severe but not disabling. *Id.* The Appeals Council declined to review that decision, the claimant sought review in the district court, and the district court upheld the denial of benefits. *Id.* On appeal, the Seventh Circuit vacated the district court's judgment and remanded the matter for further proceedings. *Id.* The court held that the ALJ erred in weighing the medical opinions of the claimant's treating physicians and discounting the claimant's subjective complaints of disabling symptoms. *Id.* at 560–62.

The court further found error with the ALJ's determination that the claimant's impairment did not meet listing 1.03. *Id.* at 562–63. The ALJ concluded that the claimant had failed to establish her inability to effectively ambulate because she used just one cane and because the medical evidence and the claimant's own testimony did not evince ineffective ambulation. *Id.* at 562. The Seventh Circuit determined that the ALJ's errors regarding the medical evidence and the claimant's subjective allegations also pervaded the step-three analysis. *Id.* at 563. Specifically, the court found that, because of those other errors, the ALJ zeroed in on the claimant's use of a single cane and failed to adequately consider whether the other regulatory examples of ineffective ambulation applied. *Id.*

In our case, however, any error the ALJ made in failing to explicitly consider other examples of ineffective ambulation was harmless, as Crockett has not demonstrated she had an inability to ambulate effectively during the relevant time period. Crockett cites the orthopedic examination findings—including a markedly antalgic gait, moderate swelling, an inability to stand with full weight on the left ankle, and limitations with flexion, supination, and pronation—but she never explains how those findings relate to the regulatory examples or otherwise show that she was unable to effectively ambulate. *See Featherstone v. Colvin*, No. 13 CV 6559, 2016 U.S. Dist. LEXIS 4328, at *15–16 (N.D. Ill. Jan. 13, 2016) ("Featherstone argues that she should have discussed his profound limp, poor balance, and leg weakness, but he fails to explain how any of those factors meet the criteria set forth in the Listing describing ineffective ambulation."). Crockett has not presented any other medical findings or opinions demonstrating that she satisfied all the criteria of listing 1.03.

Crockett also claims that she "provided numerous examples [of her alleged inability to effectively ambulate] during her hearing testimony and in her function report." ECF No.

20 at 13. She lists several examples in her brief, including that she reportedly had to crawl up and down stairs, had difficulty taking care of her personal needs, had difficulty going up and down stairs, had extreme difficulty walking, had difficulty going shopping, risked falling when going out alone, had difficulty doing house and yard work, had difficulty walking more than five minutes without having to take a break, and used a crutch both inside and outside her residence. *See id.* However, as explained in detail below, the ALJ reasonably discounted Crockett's subjective allegations of disabling symptoms and referenced several objective findings that suggested she was not as limited as she claimed.

Accordingly, the ALJ's step-three finding is supported by substantial evidence, and Crockett has not demonstrated that the ALJ committed reversible error when she concluded that Crockett's ankle impairment did not meet or medically equal the criteria of listing 1.03.

## II.    Consultative Medical Examiner

Crockett next argues that the ALJ failed to properly evaluate the consultative examination report from Dr. Reintjes. *See* ECF No. 20 at 14–15. However, under the regulatory guidelines in place at the time of Crockett's application, Dr. Reintjes' report did not constitute a medical opinion that the ALJ had to evaluate. For claims, like Crockett's, filed by an adult on or after March 27, 2017, the regulations define a medical opinion as "'a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions' in the ability to perform physical, mental, and other demands of work activities and the ability to adapt to environmental conditions." *Robert W. v. Saul*, No. 1:20-cv-00643-JMS-TAB, 2020 U.S. Dist. LEXIS 209097, at *10 (S.D. Ind. Nov. 9, 2020) (citing 20 C.F.R. § 404.1513); *see also* 20 C.F.R. § 416.913(a)(2)(i).

In his report, Dr. Reintjes did not provide a statement about what Crockett could do despite her limitations or list any impairment-related limitations or restrictions. Rather, the report simply described Dr. Reintjes' orthopedic examination findings, including that Crockett had a markedly antalgic gait favoring her left lower extremity; walked with short, guarded strides; had moderate swelling in her left ankle; was unable to bear full weight on her left ankle; and had some limitations with flexion, supination, and pronation. R. 267. Dr. Reintjes also diagnosed Crockett with "[s]tatus post bimalleolar fracture/dislocation with open reduction and internal fixation as noted above." *Id.* Because Dr. Reintjes did not provide a function-by-function assessment of Crockett's vocationally relevant functional limitations, his consultative report did not meet the definition of an opinion under the new regulations. *See* § 416.913(a)(2)(i); *see also Robert W.*, 2020 U.S. Dist. LEXIS 209097, at *10–11 (finding that a letter from the claimant's treating gastroenterologist did not constitute a medical opinion under the new regulations because it did not "contain any sort of assessment of [the claimant's] vocationally-relevant functional limitations").

Moreover, to the extent the ALJ did consider Dr. Reintjes' report a medical opinion, Crockett has not demonstrated that the ALJ committed reversible error in her evaluation. The ALJ discussed the consultative exam findings at step three and when assessing Crockett's RFC between steps three and four of the sequential evaluation process. *See* R. 13–14. The ALJ also considered the report when evaluating the medical opinion evidence, reasonably finding it non-persuasive because Dr. Reintjes did not present a function-by-function analysis of Crockett's physical capacity. R. 17. Crockett maintains that Dr. Reintjes' report constitutes objective evidence that she met listing 1.03 and that corroborated her subjective allegations. *See* ECF No. 20 at 14. However, Dr. Reintjes did not find that the criteria of listing 1.03 were

satisfied, and Crockett has failed to explain how the objective findings he did make (like the inability to bear full weight on her left leg) demonstrate that she could not ambulate effectively. Likewise, in contrast to Crockett's suggestion, the ALJ did consider Dr. Reintjes' findings vis-à-vis her reported symptoms. *See* R. 14. And the ALJ's RFC assessment did accommodate Dr. Reintjes' finding that Crockett could not bear her full weight on her left leg by allowing her to use a cane or a single crutch for ambulation. *See* R. 13.

Accordingly, the ALJ's evaluation of Dr. Reintjes' consultative examination report is supported by substantial evidence, and Crockett has not demonstrated that the ALJ committed reversible error in her evaluation of the report.

## III. Subjective Symptoms

Finally, Crockett argues that the ALJ failed to comply with SSR 16-3p when evaluating the intensity, persistence, and limiting effects of her alleged symptoms. *See* ECF No. 20 at 13–19.

ALJs use a two-step process for evaluating a claimant's impairment-related symptoms. *See* SSR 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 SSR LEXIS 4, at *3 (Mar. 16, 2016). First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *9. "In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and

limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *9–10.

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.* "In drawing its conclusions, the ALJ must 'explain her decision in such a way that allows [a reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

The ALJ here rejected Crockett's allegations of disabling symptoms, finding them inconsistent with and unsupported by the overall record. R. 14. In support of this finding, the ALJ cited the lack of consistent medical treatment during the relevant period (including no treatment from March 2015 until April 2018 and only six visits thereafter); the largely normal examination findings (antalgic gait, swelling, and tenderness but normal range of motion, strength, and muscle tone); the mild diagnostic findings (x-rays showed post-operative changes and some swelling but were otherwise stable); the conservative nature of what little treatment Crockett did receive (providers consistently recommended that she rest, use a compression wrap on her ankle, and take over-the-counter analgesics); Crockett's failure to follow up with a foot and ankle specialist (as recommended by her treating provider); Crockett's reported activities during the relevant period (e.g., cooking simple meals,

performing some housework, and watching TV); and the fact that Crockett claimed to be disabled on account of the ankle injury she suffered in 2015, but the record contained no evidence of work activity since 2010. *See* R. 13–16. Overall, the ALJ found that the record revealed "occasional flare-ups or acute episodes of pain and/or swelling," not the chronic, daily pain and swelling alleged by Crockett. R. 16. And he accommodated Crockett's left ankle impairment by limiting her to a restricted range of sedentary work. *See* R. 13–17.

Crockett takes issue with the ALJ's analysis, arguing that she failed to consider specific allegations Crockett made in her function report and at the administrative hearing, overstated Crockett's reported activities of daily living, erred in finding that the objective evidence undercut Crockett's alleged symptoms, ignored factors aside from the objective medical evidence, and failed to discuss or evaluate Crockett's alleged need to elevate her leg. *See* ECF No. 20 at 15–19. However, none of Crockett's arguments show that the ALJ's evaluation of her subjective symptoms was patently wrong.

*First*, the ALJ considered most of the subjective allegations Crockett claims she ignored. The ALJ discussed in detail Crockett's February 2018 function report:

> broken left ankle (Ex. 2E/2). In a February 2018 function report, she asserted that her condition affected her ability to lift, squat, bend, stand, reach, walk, remember, concentrate, and get along with others (Ex. 3E). She estimated that she could walk for only five minutes before needing to stop and rest. She indicated that her symptoms interfered with sleep and the ability to perform some activities of daily living including dressing and bathing, doing housework without encouragement, and shopping for necessities. She noted that she wore an ankle brace and she used crutches or a cane to assist with ambulation (Id). At the hearing, the claimant testified that

R. 14. The ALJ also summarized Crockett's hearing testimony:

> used crutches or a cane to assist with ambulation (Id). At the hearing, the claimant testified that she continues to experience constant ankle pain that has worsened since a 2015 ankle injury and surgery (Hearing testimony). She estimated that she elevates her leg six times a day. She stated that she has difficulty bearing weight on her ankle and uses a crutch for mobility. She still relies on others for assistance with some daily activities (Id).

*Id.* As the Seventh Circuit has repeatedly stated, the ALJ was not required to evaluate every statement in Crockett's function report or every piece of her testimony. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) ("We have repeatedly stated that the ALJ need not evaluate in writing every piece of testimony and evidence submitted. What we require is that the ALJ sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.") (citations and internal quotation marks omitted). And Crockett has not pointed to an entire line of evidence that the ALJ ignored.

*Second*, while I agree that the ALJ overstated Crockett's reported activities—in the February 2018 function report, Crockett claimed to have significant functional limitations in nearly all aspects of her life, *see* R. 196–204; it does not show that Crockett "remained able to engage in a number of normal day-to-day activities," R. 16—this mistake does not render her entire symptom evaluation patently wrong. The Seventh Circuit has held that, in discounting a claimant's subjective allegations, "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*. 357 F. App'x 717, 722–23 (7th Cir. 2009) (citing *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("Here, the ALJ's determination was not patently wrong because of the many specific reasons the ALJ cited from the record.") (citing *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018)). As described above, the ALJ provided other sound reasons for not crediting Crockett's complaints of disabling symptoms, including her sparse and conservative treatment, her mild objective findings, and her failure

to follow through with treatment recommendations.[6] In particular, the ALJ was entitled to draw the conclusion that someone with truly disabling ankle pain would have sought more extensive treatment.

*Third*, the ALJ reasonably determined that, overall, the objective evidence did not support Crockett's allegations of disabling ankle pain. Crockett points to some evidence—the April 2018 consultative exam, a treatment note from October 2018, and x-rays from 2018 and 2019—that tends to support her subjective reports. *See* ECF No. 20 at 17–18. However, the ALJ discussed each of those records in her decision, *see* R. 14–16, and it is not appropriate for me to re-weigh them here. Moreover, the ALJ did not fully discount Crockett's allegations of pain or find that there was no objective support for them. Rather, she concluded that the overall evidence—including many unremarkable physical examination findings and largely stable diagnostic imaging—suggested that Crockett's symptoms were not as severe as she claimed. Crockett has not shown that conclusion to be unsupported by substantial evidence or tainted by an error of law.

*Fourth*, the ALJ did not impermissibly discount Crockett's allegations of disabling ankle pain solely based on the objective medical evidence. In addition to the objective evidence, the ALJ considered Crockett's subjective statements—including her reports to treatment providers of only occasional pain and swelling—Crockett's treatment (or lack thereof), Crockett's failure to follow through with treatment recommendations, and the medical opinion evidence and prior administrative findings. Crockett does not attempt to argue that the ALJ erred with respect to these other factors.

---

[6] Crockett claims that she didn't follow up with the foot specialist because his office in Milwaukee was too far from her home in Racine. *See* ECF No. 20 at 17 (citing R. 50–53). However, as the ALJ noted, Crockett did not make any effort to see a specialist even after obtaining a local referral. *See* R. 16 (citing Exhibit 12F/42).

*Finally*, the ALJ reasonably did not include in the RFC assessment an allowance for leg elevation. The ALJ noted that, when Crockett sought emergency-room treatment for ankle pain and swelling in June 2019, the physician recommended (among other things) that Crockett "elevate her left foot when at rest." R. 15 (citing Exhibit 12F/6). However, this recommendation was made in the context of a temporary exacerbation in Crockett's symptoms, and nothing indicates that it was intended to be a long-lasting limitation. Indeed, discharge instructions from that ER visit described the widely known R.I.C.E. method for treating ankle sprains (**R**est, **I**ce, **C**ompression, **E**levation), noting that elevation "[r]ight after your injury" could help reduce swelling. R. 372. Crockett has not cited any medical records or opinions stating that daily leg elevation was needed indefinitely.

Likewise, the ALJ explicitly considered and implicitly rejected Crockett's hearing testimony that she needed to elevate her leg six or seven times a day. *See* R. 14. The ALJ reasonably determined that Crockett's infrequent medical treatment and reports to providers that she only "sometimes" experienced pain and swelling cut against her claims of disabling ankle pain, including her purported need to frequently elevate her left ankle. *See* R. 16 (citing Exhibit 12F/42). The ALJ also reasonably noted that, when Crockett did seek medical treatment, at times her swelling was described as only "diffuse" or "mild," R. 14–16 (citing Exhibits 6F/11, 12F/37–40), and she maintained normal range of motion of her left ankle even when she experienced swelling, R. 15 (citing Exhibits 12F/7–9, 37–40, 76–80). And the ALJ reasonably considered the medical opinion evidence, none of which supported a need for Crockett to elevate her left ankle throughout the day. *See* R. 17 (citing Exhibits 1A, 3A, 4F, 5F). Thus, the ALJ discussed substantial evidence showing that an allowance for leg elevation was not supported by the record.

Accordingly, the ALJ's evaluation of Crockett's alleged symptoms is supported by substantial evidence, and Crockett has not demonstrated that the ALJ committed reversible error in finding that her allegations of disabling ankle pain and swelling were not entirely consistent with or supported by the overall record.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ's decision is supported by substantial evidence and that Crockett has not demonstrated that the ALJ committed reversible error in evaluating the severity of Crockett's ankle impairment at step three, Dr. Reintjes' consultative examination report, or Crockett's subjective allegations. Thus, the Commissioner's decision is **AFFIRMED**. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 21st day of June, 2021.

STEPHEN C. DRIES
United States Magistrate Judge